IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

RICKY TITTLE CONSTRUCTION COMPANY,

    Plaintiff,

vs.

SAFECO INSURANCE COMPANY OF AMERICA,

    Defendant.

CASE NO. 4:10-CV-02 (CDL)

O R D E R

Plaintiff seeks to recover from Defendant under the Miller Act, 40 U.S.C. § 3131 *et seq.* Defendant contends that the Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff failed to file this action within one year of providing materials or labor under the contract in question, as required by the Miller Act. For the reasons set forth below, the Court agrees. Accordingly, Defendant's Motion to Dismiss (Doc. 3) is granted.

MOTION TO DISMISS STANDARD

Defendant moves to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Defendant makes a factual attack on subject matter jurisdiction, which requires the Court to look beyond the pleadings to determine whether it has jurisdiction to hear Plaintiff's claims. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial

authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam) (internal quotation marks omitted). Thus, the Court "may consider extrinsic evidence such as deposition testimony and affidavits," *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009), and "no presumptive truthfulness attaches to [P]laintiff's allegations," *Lawrence*, 919 F.2d at 1529 (internal quotation marks omitted).

## FACTUAL BACKGROUND

The parties agree that DMS-All Star Joint Venture ("DMS-All Star") contracted with the United States Army to renovate and repair a building at Fort Benning, Georgia. They also agree that DMS-All Star secured a payment bond from Defendant for the benefit of DMS-All Star's subcontractors. Finally, they agree that DMS-All Star hired Plaintiff as a subcontractor for the work on the Fort Benning project.

DMS-All Star, maintaining that Plaintiff had defaulted on its sub-contract, terminated its sub-contract with Plaintiff on December 30, 2008. (Ex. B to Santiago Decl., Feb. 12, 2010, Notice of Termination for Default, Dec. 30, 2008.) Defendant contends that Plaintiff, therefore, had until December 30, 2009 to file any civil action arising from the termination of that sub-contract. Plaintiff

contends that it performed work on January 6 and 7, 2009, and therefore, maintains that its filing of the present action on January 6, 2010 was timely.

Although Plaintiff disputed that it was in default, Plaintiff understood that the "termination decision by DMS [was] final" and agreed to cooperate with DMS-All Star for the purpose of inventorying the materials and equipment Plaintiff had left at the work site. (Ex. 2 to Tittle Aff., Mar. 22, 2010, Response to Notice of Termination, Jan. 3, 2009; Ex. B to Santiago Decl.) According to Defendant, Plaintiff's representatives were not permitted on the work site after December 30, 2008, except to perform the inventory. (Santiago Decl. ¶ 7; Ex. C to Santiago Decl., Contractors Quality Control Report, Dec. 30, 2008.) On January 5, 2009, Plaintiff's sole proprietor, Ricky Tittle ("Tittle"), met with DMS-All Star employees at the Fort Benning work site and transferred hardware to DMS-All Star personnel. (Tittle Aff. ¶ 8; Ex. 3 to Tittle Aff., Sub-Contractor Daily Report, Jan. 5, 2009.) On January 6, 2009, Tittle "finished moving the rest of [his] equipment and materials from containers" and "spent part of the day removing temporary lock cores" and meeting with DMS-All Star personnel. (Tittle Aff. ¶ 9; Ex. 4 to Tittle Aff., Sub-Contractor Daily Report, Jan. 6, 2009.) On January 7, 2009, Tittle returned keys to DMS-All Star personnel, attempted to return employee contractor badges, and finished site

3

clean-up. (Tittle Aff. ¶ 10; Ex. 5 to Tittle Aff., Sub-Contractor Daily Report, Jan. 7, 2009.)

Plaintiff contends it is entitled to protection under the Miller Act and under the bond issued by Defendant to DMS-All Star for work performed by Plaintiff and for materials provided by Plaintiff toward the Fort Benning project. The sole issue presented by the present motion is whether Plaintiff performed work on January 6 and 7, 2009 such that its January 6, 2010 filing of this action was timely.

## DISCUSSION

The Miller Act requires prime contractors, such as DMS-All Star, to furnish a payment bond for the protection of subcontractors who perform labor or supply materials to the contract project. 40 U.S.C. § 3131(b)(2). A subcontractor who has provided labor or material to a contract project for which a payment bond has been furnished and who has not been paid within 90 days of performing the labor or supplying the materials "may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due." 40 U.S.C. § 3133(b)(1).[1] Importantly, an action under the

---

[1] Such a civil action "must be brought . . . in the name of the United States for the use of the person bringing the action." 40 U.S.C. § 3133(b)(3)(A). Plaintiff, which is a sole proprietorship being represented by its sole proprietor, did not bring its action in the name of the United States for the use of Plaintiff. Given the Court's finding that it has no subject matter jurisdiction over this action, the Court need

4

Miller Act "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action."  40 U.S.C. § 3133(b)(4).

"Those circuits that have considered the question have uniformly regarded the one-year filing requirement as a jurisdictional limitation on the substantive rights conferred by the Miller Act." *United States ex rel. Harvey Gulf Int'l Marine, Inc. v. Md. Cas. Co.*, 573 F.2d 245, 247 (5th Cir. 1978).[2]  Plaintiff does not dispute that it was required to file its action within one year of the last day on which Plaintiff provided labor or materials toward the project. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss.)  Plaintiff also does not dispute that, in light of the date Plaintiff filed its Complaint, Plaintiff must establish that Plaintiff provided labor or materials on or after January 6, 2009.  (*See id.*)  The sole dispute in this case is whether Plaintiff performed labor within the meaning of the Miller Act on January 6 and 7, 2009.

Post-project tasks, such as repairs, removal of equipment, and final inspections, are not generally considered "labor" within the meaning of the Miller Act.  *United States ex rel. Dillon Constr. Inc.*

---

not determine what, if any, implications arise from Plaintiff's failure to bring its action in the name of the United States.

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*v. Cont'l Ins. Co.*, 776 F.2d 962, 963-64 (11th Cir. 1985) (finding that repairs are not "labor"); *accord Gen. Ins. Co. of Am. v. United States ex rel. Audley Moore & Son*, 406 F.2d 442, 443 & n.3 (5th Cir. 1969) (concluding that final clean-up and inspection were not "labor"); *United States ex rel. Tri-State Boring, Inc. v. Raytheon Serv. Co.*, No. CIV.A 96-3887, 1997 WL 736926, at *3-*4 (E.D. La. Nov. 25, 1997) (finding that removal of certain equipment from work site was not "labor" within meaning of Miller Act); *cf. S. Steel Co. v. United Pac. Ins. Co.*, 935 F.2d 1201, 1205 (11th Cir. 1991) (per curiam) (noting that in special circumstances, repairs may be considered "labor" if repairs are necessitated by another subcontractor's mistake and are integral to project). Here, Plaintiff's contract with DMS-All Star was terminated on December 30, 2008; after that date, Plaintiff's representatives were permitted to go to the work site to inventory materials and equipment Plaintiff had left at the work site. Accordingly, on January 6 and 7, 2009, one of Plaintiff's representatives moved certain equipment, removed some materials, met with DMS-All Star personnel, cleaned up the site, and returned his keys. These final wrap-up tasks are akin to the post-project repairs, equipment removal, and inspections that the courts have found do not constitute "labor" within the meaning of the Miller Act. Plaintiff pointed to no other work performed on or after January 6, 2009. Therefore, the Court must conclude that Plaintiff

failed to commence its action within the limitation period, and Defendant's motion shall be granted.

CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. 3) is granted.

IT IS SO ORDERED, this 6th day of July, 2010.

S/Clay D. Land  
CLAY D. LAND  
UNITED STATES DISTRICT JUDGE